Filed 8/5/14  In re Jose A. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JOSE A., a Person Coming Under the Juvenile Court Law. _____ THE PEOPLE, Plaintiff and Respondent, v. JOSE A., Defendant and Appellant. | B252629 (Los Angeles County Super. Ct. No. VJ43480) |

APPEAL from an order of the Superior Court of Los Angeles County, Kevin Brown, Judge.  Remanded and affirmed with directions.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

Petitioner, Jose A., appeals from the order of wardship (Welf. & Inst. Code, § 602) entered following an adjudication hearing during which the juvenile court found he possessed marijuana for sale (Health & Saf. Code, § 11359), a felony (count 1), and sold, offered to sell or transported marijuana (Health & Saf. Code, § 11360, subd. (a)), a misdemeanor (count 2). The juvenile court placed Jose A. at home on probation. We remand the matter and direct the juvenile court to correct the minute order reflecting the adjudication and disposition to show the court found count 1 to be a felony and count 2 to be a misdemeanor and, in all other respects, affirm the order of wardship.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Facts*.

   a. *The prosecution's case.*

At approximately 9:40 a.m. on April 16, 2013, Los Angeles School Police Officer Steven Gastelum was on patrol in the area surrounding South Region High School in Los Angeles. Approximately two miles from the school, the officer conducted a traffic stop. Jose A. was seated in the front passenger seat of the vehicle. When the officer approached the car, Gastelum smelled a "strong odor" of marijuana. The odor seemed to be coming from a backpack and when Gastelum asked whose pack it was, Jose A. indicated it belonged to him. When the officer looked inside the backpack, he found "[t]en individual[ly] wrapped bags of [a] green leafy substance resembling marijuana." There were, however, no smoking paraphernalia, such as papers, a lighter or a pipe in the backpack or on Jose A.'s person and his fingertips were not stained from smoking. Under the circumstances, Officer Gastelum believed Jose A. possessed the marijuana for the purpose of sale.

Rachel Redmond is the senior criminalist for the Los Angeles County Sheriff's Department. She analyzes substances believed to be controlled substances. In the present case, Redmond received an evidence envelope which contained "10 similar-sized Ziploc bags [each of which] contained green plant material." The estimated total net weight of the material when removed from the

2

baggies was 4.03 grams. Redmond performed various tests on the material, the results of which indicated it contained marijuana.

b. *Defense evidence.*

Jose A. testified in his own defense. On the morning of April 16, 2013, he had gone to South Gate High School where he had picked up the marijuana. A friend had told him that a dealer would be on the sidewalk in a particular spot in front of the school, so Jose A. left his house at approximately 7:45 a.m. then walked and took the bus to the high school. After Jose A. arrived at the school, he saw a man who fit the description he had been given of the dealer. Jose A. approached the man, who offered to sell him three baggies of marijuana for ten dollars. Jose A. decided to purchase nine bags and the dealer gave him an extra bag for free. Jose A. determined he might as well purchase a large amount, "as in Costco – get the big bulk." At that time Jose A. was smoking approximately "five blunts," or marijuana cigarettes, each day. After he made his purchase, Jose A. walked to the home of a friend, who had said he would give him a ride. Jose A. was sitting in the front passenger seat of the car when he and his friend were stopped by Officer Gastelum.

The officer approached the passenger side of the vehicle "with his weapon out." After ordering Jose A. out of the car, Gastelum "grabbed" Jose A.'s backpack and searched it. Jose A. admitted the backpack belonged to him and told the officer the marijuana inside was for his "personal use."

By this time a second officer had arrived at the scene. That officer told Jose A., because of the quantity of marijuana in the backpack, the officer believed Jose A. possessed it for sale. Jose A. then told the officer, "If you go to Costco, you buy big bulks. Right? Instead of just buying small amounts on a day-to-day basis, you might as well get it over." The officer agreed and when Jose A. told him he "love[d] marijuana," the officer responded, "I [can] see that." Jose A. indicated he had not planned to sell any of the marijuana. He had purchased it strictly for his own use.

3

Because at his school he was subject to search, Jose A.'s plan had been to "drop off the marijuana at [his] aunt's house," then go to school. Jose A. would have left the entire backpack at his aunt's home and he would not have told her what was inside.

           c. *Rebuttal.*

Officer Gastelum stated that, at no time had Jose A. mentioned Costco. The other officer who had stopped to assist Gastelum had made the analogy. In addition, although Jose A. had testified he and the driver were the only two individuals in the car, Gastelum indicated there had been a third juvenile riding as a passenger in the back seat.

           2. *Procedural history.*

On June 14, 2013, a petition was filed pursuant to Welfare and Institutions Code section 602 in which it was alleged in count 1 that Jose A., "[o]n or about 4/16/2013 . . . , [committed] the crime of POSSESSION OF MARIJUANA FOR SALE, in violation of HEALTH & SAFETY CODE 11359, a Felony . . . ." In count 2, it was alleged that on or about "4/16/2013 . . . [Jose A. committed] the crime of SALE/OFFER TO SELL/TRANSPORTATION OF MARIJUANA, in violation of HEALTH & SAFETY CODE 11360[, subdivision] (a), a misdemeanor. . . ."

After the evidence had been presented and counsel had made their arguments, the juvenile court indicated it believed the People had "met their burden" of proof beyond a reasonable doubt. The juvenile court indicated it had not believed Jose A.'s testimony. The court continued: "I watched him and I listened very closely. The tremor in his voice, the body language. There were certain points where he was more nervous than others and I do not find him to be a credible witness." On the other hand, the juvenile court determined the officers had appeared truthful.

The juvenile court then made the following findings: "The allegations . . . in the petition – count 1 is a felony; count 2 is a misdemeanor – are true beyond a

4

reasonable doubt. The petition is sustained. The minor is a person described by [section] 602 [of the Welfare and Institutions Code]." The juvenile court granted Jose A. home on probation, under various terms and conditions. The court then stated Jose A.'s maximum term of confinement would be "three years."

## CONTENTIONS

Jose A. contends: (1) "The [juvenile] court erred [by] orally declaring a maximum term of confinement of three years since [the minor] was placed home on probation and not . . . in custody" and (2) "[t]he minute order of the adjudication and disposition erroneously reflects that the [juvenile] court determined that count 1 was both a misdemeanor and a felony when the court actually declared count 1 to be a felony and count 2 to be a misdemeanor." (Capitalization omitted.)

## DISCUSSION

Jose A. first contends the juvenile court erred when it set a maximum term of confinement since he was placed home on probation. Although the contention has merit, since Jose A. suffered no prejudice, there is no basis for reversal or remand.

Welfare and Institutions Code section 726, subdivision (d) provides in relevant part: "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." Here, Jose A. was not removed from the physical custody of his parents and "[t]his means . . . the necessary predicate for specifying a term of imprisonment [did] not exist. The sentencing authority of a court in almost all instances is prescribed by statutory law, as it is in this case. The statute did not empower the court to specify a term of imprisonment and that should have been the end of the matter." (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 541.)

5

In *In re Danny H.* (2002) 104 Cal.App.4th 92, 106, the court determined "[o]nly when a court orders a minor removed from the physical custody of his parent or guardian is the court required to specify the maximum term the minor can be held in physical confinement. Accordingly, there [was] no need to . . . correct the [juvenile] court's order calculating [the minor's] maximum theoretical period of confinement. [Citations.]" Only "[i]n the event [a] minor violates the terms of his probation, [will] a further noticed hearing . . . have to be held before he [may be] subjected to a modified disposition removing him from his parents' custody. [Citation.] If that happens, then at *that* time the juvenile court will have to . . . [set] and/or declar[e] the maximum term of physical confinement. In the meantime, the maximum term of confinement contained in the current dispositional order is of no legal effect. Because [Jose A.] is not prejudiced by the presence of this term, there is no basis for reversal or remand in this case." (*In re Ali A.* (2006) 139 Cal.App.4th 569, 573-574, original italics.)[1]

In his second contention, Jose A. asserts the minute order of the adjudication and disposition erroneously indicates the juvenile court determined count 1 to be both a misdemeanor and a felony when the court actually declared count 1 to be a felony and count 2 to be a misdemeanor. He indicates this error must be corrected. The contention is well taken.

---

[1]    In *In re A.C.* (2014) 224 Cal.App.4th 590 at page 592, the court commented on the decision in *In re Ali A.*, *supra*, 139 Cal.App.4th at pp. 573-574: "The legal reasoning in *Ali A.* remains sound. However, the error of including maximum terms in noncustodial orders continues, unnecessarily depleting the limited resources of the judicial system. To stop this error, . . . we now conclude that where a juvenile court's order includes a maximum confinement term for a minor who is not removed from parental custody, the remedy is to strike the term." The court also refers to another case (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 541-542) in which the appellate court decided to strike a maximum term of confinement when the juvenile was placed home on probation. (*In re A.C.,* at p. 592.) However, in the present matter, we choose to follow *In re Ali A.,* at pp. 573-574. Since the court's statement of a maximum term of confinement carries no legal effect, we need take no action.

Welfare and Institutions Code section 702 provides in relevant part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." The statutory language "is unambiguous. It requires an explicit declaration by the juvenile court whether an offense would be a felony or misdemeanor in the case of an adult. [Citations.]" (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1204.)

Here, the juvenile court complied with Welfare and Institutions Code section 702 by stating on the record that count 1, possession of marijuana for sale in violation of Health and Safety Code section 11359, is a felony and count 2, the sale, offer to sell or transport marijuana in violation of Health and Safety Code section 11360, subdivision (a) is a misdemeanor. However, on the minute order purportedly reflecting the disposition in the matter, the court clerk improperly indicated the offense in count 1 was both a felony and a misdemeanor.

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385, citing *People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.) Moreover, the minute order or abstract of judgment must be corrected to properly reflect the oral pronouncement of judgment and we, as the appellate court, have the authority to order the juvenile court to correct such a clerical error. (*People v. Mitchell,* at pp. 185-186.) Accordingly, we will remand the matter and direct the juvenile court to correct the minute order reflecting the adjudication and disposition to show the court determined count 1 to be a felony and count 2 to be a misdemeanor.

7

## DISPOSITION

The matter is remanded and the juvenile court is directed to correct the minute order reflecting the oral pronouncement of judgment to show the court determined count 1 to be a felony and count 2 to be a misdemeanor. In all other respects, the order of wardship is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

8